## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAMELA THARP,** | : | **Civil No. 4:24-CV-200** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

This Social Security appeal presents a single, narrow issue: The plaintiff alleges that the Administrative Law Judges (ALJ) in her case erred by affording less persuasive power to a treating source medical opinion which was based upon treatment which took place after the relevant timeframe of her claim. In evaluating whether the ALJ's decision to deem unpersuasive an opinion based on treatment outside the relevant time period was prejudicial error warranting remand, we are

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reminded that the Supreme Court has prescribed a deferential standard of review in

this field, explaining that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In this case, after a review of the record, and mindful of the fact that substantial

evidence "means only—'such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we conclude that

substantial evidence supported the ALJ's decision to give less persuasive force to

the opinion of a medical source who never had the opportunity to evaluate the

plaintiff's impairments during the crucial timeframe encompassed by her claim.

Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.    <u>Statement of Facts and of the Case[2]</u>

In this appeal, Tharp raises a single, specific claim, asserting that the ALJ erred in finding that the opinion of a mental health treating source, CRNP Kathryn Plotkin, lacked persuasive power because that opinion came from a source who only began treating Tharp months after the pertinent timeframe had elapsed in her case. With respect to this narrow question, the relevant facts can be simply stated:

### A.    <u>Clinical Background and Opinion Evidence</u>

On February 10, 2022, Pamela Tharp filed an application for child's insurance benefits, alleging that her disability began on January 1, 2014. (Tr. 17). Tharp was born in February of 2000. (Tr. 19). In order to be entitled to childhood disability benefits, an individual must (1) be the child of an insured wage earner who died or is entitled to a retirement insurance benefit or disability insurance benefit; (2) be age 18 or over; and (3) be under a disability which commenced before age 22. <u>See</u> 20 C.F.R. § 404.350(a)(5). Accordingly, it is undisputed that, in Tharp's case, the applicable timeframe for her child insurance benefit claim was from the

---

[2] Tharp's appeal focuses on the ALJ's consideration of evidence relating to the plaintiff's emotional impairments. Therefore, our discussion of the evidence and medical opinions will also focus on Tharp's mental health.

plaintiff's eighteenth birthday, February 19, 2018, through her twenty-second birthday, February 19, 2022.

Tharp claimed childhood disability based upon a series of allegedly severe impairments including lumbar fusion, major depressive disorder, generalized anxiety disorder, a panic disorder/agoraphobia, and post-traumatic stress disorder (PTSD). (Tr. 20). With respect to these impairments, the ALJ summarized the pertinent clinical history and Tharp's activities of daily living during the relevant period of time in the following terms:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the treatment evidence of record during the relevant period.
>
> By way of history, prior to the claimant's eighteenth (18th) birthday, on November 23, 2016, she underwent an L4-S1 fusion surgery and physical therapy, which was documented as not providing improvement of her condition (2F; 9F/12; 10F/94). In August of 2018, the claimant reported back pain that radiated down her legs and was referred for pain management (7F/3, 5). A May 9, 2021 x-ray of the lumbar spine showed post-surgical changes (11F/56) and a July 23, 2021 EMG showed possible bilateral sural sensory neuropathies (which could be a false positive) without any evidence of polyneuropathy or radiculopathy (10F/291; 11F/68). Additionally, a January 7, 2022 MRI of the lumbar spine showed multilevel degenerative disc disease with nerve root contact and neural foraminal narrowing (11F/94; 15F/12).
>
> The claimant's physical examinations showed an abnormal but independent gait, including minimal foot clearance when walking, scuffing her feet, tenderness to palpation of the lumbar spine, some impaired sensation at L2-3 and L5 and lower extremities, some decreased balance, a reduced range of motion of the lumbar spine, and

4

slightly reduced strength/giveaway weakness, but normal reflexes and coordination and negative straight leg raise testing (9F/12, 32; 10F/274, 283; 11F/46, 74-75).

With regard to the claimant's mental health conditions, she was diagnosed with major depressive disorder, a generalized anxiety disorder, a panic disorder with agoraphobia, and PTSD, for which, during the period in question, she has engaged in some outpatient counseling and has a remote history of psychiatric hospitalization (1F; 3F-5F; 13F; 25F). The claimant's treatment during the relevant period was limited and results of me[n]tal status examinations and clinical findings are relatively unremarkable, showing some mood instability, difficulty with interpersonal relationships, management of past trauma, and anxiousness but normal thought perception, attention, insight, impulse control, and cognition, and cooperativeness (3F-5F; 13F).

During the consultative examination in January of 2019, the claimant reported ongoing mental health symptomology and upon mental status examination, demonstrated poor eye contact, slouched posture and a flat affect. The claimant had exhibited poor judgment but only displayed mild limitation in attention, concentration, and memory, fair insight, and had fair manner of relating. In addition, she had normal motor behavior, speech and thought process, and was oriented and cooperative (8F).

The claimant incurred no hospitalization nor was involved in a partial program during the period at issue.

It is also important to note that the claimant reported independence in self-care and activities of daily living, such as caring for pets, preparing simple meals, shopping, socializing online, watching television, and doing artwork (8E; 8F/6). Additionally, the claimant's sister, Helen Tharp, completed a Third Party Function Report indicating the claimant washes dishes, sweeps the floor, prepares simple meals, shops in stores, manages finances, and plays video games (9E).

(Tr. 25).

5

Given this clinical background, four medical sources opined regarding the extent to which Tharp's emotional impairments were disabling. Three of these experts concluded that Tharp was not wholly disabled due to her mental impairments; the sole outlier opinion came from CRNP Kathryn Plotkin, a medical source who only began treating Tharp in April of 2022, several months after the period of her childhood disability had elapsed.

Two of these opinions were rendered by state agency experts. Initially, in April of 2022, Dr. Karen Plowman conducted a review of Tharp's treatment records and found that she was mildly impaired in terms of understanding and applying information, but moderately impaired with respect to her ability to adapt, concentrate, and interact with others. (Tr. 67). Assessing Tharp's limitations across a broad spectrum of emotional demands in the workplace, Dr. Plowman found that Tharp was not significantly limited in many spheres of functioning and experienced no more than moderate limitations in terms of concentration and working with others. (Tr. 72-73). Accordingly, Dr. Plowman found that Tharp "is able to meet the mental demands for simple one to two step tasks on a sustained basis despite the limitations associated with her impairments." (Tr. 73).

A second state agency expert, Dr. Faisal Roberts, reached similar conclusions in August of 2022. (Tr. 79-81, 83-85). As a result of his review of Tharp's treatment history Dr. Roberts found that her:

> [B]asic memory processes are intact. The claimant can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks). The claimant can make simple decisions and would not require special supervision in order to sustain a routine. The claimant can perform simple, routine, repetitive tasks in a stable environment. The claimant is capable of performing within a schedule and at a consistent pace.
>
> The claimant is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. The claimant is capable of asking simple questions and accepting instruction. The claimant is able to interact appropriately with the general public. The claimant is able to get along with others without distracting them. The claimant can exercise appropriate judgment.
>
> The claimant is able to meet basic mental demands on a sustained basis despite the limitations resulting from impairments. This opinion is consistent with the prior opinion, per Dr. Plowman.

(Tr. 85-86).

These mental health assessments were consistent with an earlier January 24, 2019 opinion of a consulting examining source, Dr. Krista Coons. (Tr. 533-540). Following an examination of Tharp, Dr. Coons opined that Tharp was moderately impaired in adapting and working with others, and mildly impaired in terms of

carrying out complex instructions, but found that she was otherwise unimpaired. (Tr. 538-539).

Only one medical source concluded that Tharp's emotional impairments were disabling, albeit a treating source who had only begun caring for Tharp after the pertinent timeframe had passed. On April 21, 2023—some fourteen months after Tharp's childhood disability period had closed—CRNP Kathryn Plotkin completed a medical questionnaire relating to the plaintiff's mental health. (Tr. 1291-98). In this questionnaire CRNP Plotkin indicated that she first began treating Tharp in April of 2022, several months after Tharp's period of childhood benefit eligibility elapsed. (Tr. 1291). While CRNP Plotkin described Tharp as severely impaired in multiple emotional spheres, (Tr. 1296-97), when asked whether her opinion applied to the period since December 5, 2018, CRNP Plotkin declined to answer. (Tr. 1298). Thus, the only medical opinion supporting Tharp's claim came from a source who had not seen or treated Tharp during the pertinent timeframe, and who declined to opine whether Tharp's emotional impairments had existed since December 2018, the relevant period of time.

B. **The ALJ Decision**

It was against this medical backdrop that Tharp's disability claim came to be heard by the ALJ on March 16, 2023. (Tr. 38-63). Following this hearing, on August 21, 2023, the ALJ issued a decision denying Tharp's application for benefits. (Tr. 14-37). In that decision, the ALJ defined the operative timeframe of Tharp's claim as spanning from February 19, 2018, through February 19, 2022. (Tr. 17). The ALJ then found that Tharp had not attained age twenty-two (22) as of January 1, 2014, the alleged onset date, and had not engaged in substantial gainful activity since February 19, 2018, Tharp's eighteenth (18th) birthday. (Tr. 19).

At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Tharp had the following severe impairments: status post lumbar fusion, major depressive disorder, generalized anxiety disorder, a panic disorder/agoraphobia, and post-traumatic stress disorder (PTSD). (Tr. 20). At Step 3, the ALJ determined that Tharp's impairments did not meet or medically equal the severity of any listed impairments. (Tr. 20-23). On this score the ALJ concluded, consistent with the greater weight of persuasive medical opinions, that Tharp's emotional conditions presented no more than a moderate degree of impairment. (Id.)

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering Tharp's limitations from her impairments, stating that:

9

> After careful consideration of the entire record, the undersigned finds that, prior to attaining age twenty-two (22), the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally push and pull with the lower extremities, including foot controls, occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs but can never on ladders ropes or scaffolds. She can tolerate frequent exposure to temperature extremes of cold, humidity, vibrations, fumes, odors, dusts, gases, and poor ventilation, and hazards, including moving machinery and unprotected heights. The claimant can perform simple, routine tasks, but no complex tasks, in a low-stress work environment, which is defined as involving occasional decision making and occasional changes in work setting. She can tolerate frequent interaction with supervisors, occasional interaction with coworkers, but no team-type setting work, and no more than incidental contact with the public. The claimant cannot perform fast-paced production work, such as conveyor belt or quota-based work.

(Tr. 23-24).

Specifically, in making the RFC determination, the ALJ considered the clinical evidence, the medical opinions, and Tharp's self-described activities. In particular, the ALJ found  generally persuasive the state agency and examining source consensus that Tharp's emotional symptoms were moderately impairing but not wholly disabling, impairments. (Tr. 26-28). The ALJ concluded that the outlier opinion of CRNP Plotkin was less persuasive, explaining that:

> The undersigned also reviewed the April 21, 2023 opinion of the claimant's treating provider Kathryn Plotkin, CRNP (20F). Ms. Plotkin completed a Questionnaire assessing significant limitation in all areas of mental functioning, including no useful ability to function in attendance, following a routine, working in proximity to others with being distracted, completing a normal workday or workweek without

psychological interruption, accepting instructions from supervisors, getting along with coworkers and peers, responding appropriately to change, and dealing with normal work stress. Ultimately, she opined that the claimant would be unable to sustain full time employment and would be absent more than four (4) days per month due to symptomology of her mental health impairments. However, the undersigned notes that this opinion was authored more than a year after the relevant period. During treatment, the claimant's thought process was tangential at times, and she exhibited a poor hygiene, defensive and uncooperative behavior, deficits in insight and judgment, and was paranoid, but this was all after the claimant had attained the age of twenty-two (18F/5, 7, 9, 13, 17). Further, the other evidence of record during the relevant period fails to establish more than a moderate limitation in any area of functioning. The claimant' mental status examinations of record during the relevant period are generally unremarkable and during the consultative examination, she showed only mild limitation in concentration and memory (5F; 8F; 13F). While the claimant had difficulty managing her emotions and stress relating to past trauma and experienced panic attacks in large crowds, she remained generally independent in self-care and activities of daily living and shopped in stores (8E; Hearing Testimony). Therefore, this opinion was found unpersuasive in formulating the claimant's residual functional capacity.

(Tr. 28-29).

Having arrived at this RFC assessment, the ALJ found at Step 5 that there were jobs which existed in substantial numbers in the national economy which Tharp could perform. (Tr. 29-31). Accordingly, the ALJ concluded that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Tharp advances a single claim asserting that the ALJ erred in finding that the opinion of a mental health treating

source, CRNP Kathryn Plotkin, lacked persuasive power because that opinion came from a source who only began treating Tharp months after the pertinent timeframe had elapsed in her case. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial

14

review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based upon alleged inadequacies in the articulation of a claimant's

mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the

United States Court of Appeals recently addressed the standards of articulation that

apply in this setting. In Hess, the court of appeals considered the question of whether

an RFC, which limited a claimant to simple tasks, adequately addressed moderate

limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of

the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

In order to be entitled to childhood disability benefits, an individual must (1) be the child of an insured wage earner who died or is entitled to a retirement insurance benefit or disability insurance benefit; (2) be age 18 or over; and (3) be under a disability which commenced before age 22. <u>See</u> 20 C.F.R. § 404.350(a)(5). In making this disability determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); <u>see also</u> 20 C.F.R.

17

§§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the

18

proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See Titterington v. Barnhart,</u> 174 F. App'x 6, 11 (3d Cir. 2006); <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment

19

of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence

standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior

Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. <u>Id</u>. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). <u>Id</u>. at §§ 404.1520c(b)(3), 416.920c(b)(3).

<u>Andrew G. v. Comm'r of Soc. Sec.</u>, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Mason</u>, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

23

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Finally, and most relevant to our assessment of this case, is the familiar proposition that medical opinions which describe a claimant's condition outside the relevant timeframe have "little, if any, relevance to whether [the plaintiff] was disabled during [the relevant] time. . . ." Zirnsak v. Colvin, 777 F.3d 607, 614 (3d Cir. 2014).

### D. The ALJ's Decision is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a

24

reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565. Further, when addressing the ALJ's duty of articulation with regard to a claimant's emotional limitations, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 214 (3d Cir. 2019).

Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the decision by the ALJ that Tharp was not disabled. Therefore, we will affirm this decision. In reaching this result we note that Tharp advances a single, narrow and specific claim asserting that the ALJ erred in finding that the opinion of a mental health treating source, CRNP Kathryn Plotkin, lacked persuasive power because that opinion came from a source who only began treating Tharp months after the pertinent timeframe had elapsed in her case.

In our view there was no error here. The administrative record reveals that CRNP Plotkin did not begin treating Tharp until after her childhood disability period had passed. Moreover, CRNP Plotkin did not opine on the severity of Tharp's disability until some fourteen months after the relevant period of time in this case. Further, significantly, CRNP Plotkin specifically declined to state that Tharp's severe symptoms extended back to 2018, the relevant period in this case. Given the immutable fact that CRNP Plotkin refused to opine on Tharp's mental state during the relevant timeframe and only treated Tharp after that disability period had passed, the ALJ was fully justified in concluding CRNP Plotkin's opinion had "little, if any, relevance to whether [the plaintiff] was disabled during [the relevant] time. . . ." Zirnsak, 777 F.3d at 614. Further, the ALJ was entitled to give greater persuasive authority to those medical experts who expressly opined regarding the severity of Tharp's symptoms during the pertinent period of time, all of whom agreed that, despite her impairments, Tharp could perform some work. This conclusion was supported by substantial evidence; that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Therefore, we may not disturb this finding on appeal.

Thus, in the final analysis, the ALJ's decision in this case was entirely consistent with settled caselaw, which holds that we should affirm "as long as the

ALJ offers a 'valid explanation," for a mental RFC. <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019). On this score, it is well-settled that an ALJ offers a valid explanation for a simple task RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, which demonstrated that [s]he is capable of engaging in a diverse array of 'simple tasks[.]'" <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 214 (3d Cir. 2019). In the instant case the ALJ fulfilled this duty by crafting an RFC based upon what were the more persuasive and timely medical opinions. Substantial evidence supported the ALJ's conclusions in this regard. Thus, there was no error here.

    In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas,</u>

<u>Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: August 27, 2025

28